ELLA J. MAYNE v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

(Filed July 18, 1902.)

1. NEGLIGENCE—What Is. It is negligence for a railway company to allow a freight train on a side track to block the crossing or passage way over such side track to the depot of the company, at a time when a passenger train of the company is due at the station, so that persons desiring to take passage on such passenger train cannot reach the depot in time to purchase tickets and get aboard such train.

2. SAME—No Liability Unless Proximate Cause of Injury. In case a railway company is guilty of negligence in blocking with a freight train the usual crossing to the depot, thereby compelling persons desiring to take passage on the train of the defendant company to choose some other route in order to get to the depot, and such person sustains an injury while on the way to the depot, such railway company is not liable to the person injured, unless the negligence on the part of such railway company is the proximate cause of the injury, and the injury is the natural and probable consequence of the negligence of the company in allowing the crossing to be blocked, and the injury ought to have been foreseen in the light of the attending circumstances.

3. RAILWAY COMPANY INVITES PERSONS TO PREMISES FOR BUSINESS—Must Use Care to Have Premises Safe. A railway company, having a station at a given point, by implication invites persons to come upon the premises for business, anl it is the duty of the company to be reasonably sure that it is not inviting them into danger, and to that end the company must use care and prudence to render the premises safe for the visit.

4. SAME—Company Not Liable Unless Premises Are Unsafe. Even though a railroad company holds out such invitation, and a person desiring to take passage on the train of the defendant company accepts such invitation, the company is not liable for an injury to such person, unless it is shown that the premises were not safe for the visit, and that it ought to have been foreseem that a person attempting to reach the depot of the company was liable to be injured.

5. ACTION FOR DAMAGES—Petition Must Show What. In an action against a railway company to recover damages for injuries received, the petition must show that the injury was the natural and probable consequence of the negligent and wrongful act of

the defendant company, and that the defendant company ought to have foreseen such injury in the light of the attending circumstances; and a petition which fails to show such facts, by proper averments, does not state a cause of action, and an objection to the introduction of evidence on the ground that the petition does not state facts sufficient to constitute a cause of action will be sustained.

(Syllabus by the Court.)

*Error from the District Court of Grant County; before John L. McAtee, Trial Judge.*

*Mackey & Simons,* for plaintiff in error.

*M. A. Lowe, W. F. Evans, C. O. Blake* and *E. E. Blake,* for defendant in error.

## STATEMENT OF FACTS.

This is an action brought in the district court of Grant county by the plaintiff in error against the defendant in error, to recover damages in the sum of $4,000, alleged to have been sustained by reason of the negligence of the defendant in error, the material facts in relation to such alleged negligence being stated in the petition as follows:

"That on the morning of June 28, 1900, this plaintiff desired to take the passenger train of the defendant railway company, as a passenger on the north and east bound train, and for that purpose had her preparations made and was ready to start to the depot of the defendant railway company to await the arrival of said train; that she was ready to go to said depot so as to arrive there a few minutes in advance of the time scheduled for the arrival of said train; that she only had a short distance to go, having stopped the night previous at a house only a short distance from said depot, on the street used as the principal business thoroughfare of said town of Renfrow. That when she was ready to start for said depot, there was a freight train of the defendant railway company

switching on said side track aforesaid, and running the engine and cars thereon, and plaintiff did not attempt to cross said track at that time, believing it to be dangerous, and believing that the defendant company would cause said freight train to stop switching and running said cars and engine up and down said track before the time for the arrival of the passenger train, and would clear a passage way for persons desiring to go to said depot for the purpose of taking said passenger train. That plaintiff waited for the purpose of seeing if said train would stop switching or a passage way would be cleared until the time was close for the arrival of said train, and she could see the smoke from the engine of said passenger train as it approached in the distance from the south. Thereupon plaintiff stated to go over to said depot to see if she could get to said depot, and believing that when she got near said depot that a passage way would be opened up so that she could pass through, and get to said depot.

"That she went over toward said depot, over and by the path used by persons generally going to said depot on foot, and leading to the north end of said depot. That when she came near to said freight train on said side track said train had been stopped, and said train closed up, making a solid continuous train of cars completely blocking said pathway, so that she could not get to the depot by that route; thereupon she started to go to the south to take the way or route of getting to the depot usually used by teams and wagons in going to and from said depot, as hereinbefore set out, but learned that it was also blocked by said freight train, and she could not pass that way; and plaintiff alleges the fact to be that said freight train was a solid, continuous train of cars extending a long distance each way both above and below said depot, and between her and said depot, and completely shutting off access to said depot by any of the usually traveled or used ways or routes. That the only way by which plaintiff could then get to said depot was to go around said freight train, and for this purpose she started to the north, said freight train being headed north, and the engine of said train being near the north

end of said side track, and about at the south end of the stock pens of the defendant railway company at said station. That plaintiff went north and around said engine and train, and started south to go to the depot. That by this time the passenger train of the defendant railway company and upon which the plaintiff desired to take passage was rapidly approaching said station, coming north; that plaintiff hastened to get to said depot, walking rapidly down the right of way of the defendant railway company, and that by reason of the proximity of said approaching passenger train, plaintiff's attention was directed to it. That between plaintiff and the depot of defendant were two mail catchers, or cranes, erected and maintained on the west side of the main track of defendant's railway; that said cranes or mail catchers were situated a few feet out from the track, and heavy beams or ties, extended from the base of said cranes or catchers to said track, said beams being similar in size to the ties used in the road bed of the railway; that said beams or ties were about 6 or 8 inches in height from the ground, and about eight inches wide at the top. That the space in between said beams or ties was vacant, and not filled up with dirt. That in order to get to the depot, plaintiff attempted and was compelled to pass over said beams or ties projecting between said mail cranes or catchers, and the main track. That plaintiff is a large, heavy, fleshy woman, and as she went to pass over said ties or beams aforesaid, in some manner she tripped and fell heavily upon said ties or beams. That she was walking as carefully as she could under the circumstances, and that said fall was not caused by any fault or negligence upon her part. That she struck her face and nose violently upon one of said ties, or some hard substance there at the time, bruising her face badly and causing her nose to bleed profusely. That she struck her right hand and shoulder upon said ties, or the rail of the railroad track, or some hard substance, in such a manner as to violently wrench and stain the muscles and tendons of her hand and arm, and to bruise her shoulder, and caused her hand, arm, and shoulder to become inflamed and swell, and be very painful. That plaintiff struck her knee in falling upon some hard substance, badly

bruising it, and causing it to swell and become greatly discolored, and injuring the knee cap. That by said fall plaintiff sustained an injury in the chest and spine, and to the muscles of the back, and she suffers almost continual pain from said injury."

An answer was filed to the petition, the case came on for trial, a jury was empanelled and sworn, and a statement on behalf of the plaintiff was made to the jury. The plaintiff was called as a witness in her own behalf, and, after one or two preliminary questions had been asked, the defendant objected to the introduction of any evidence under the petition upon the ground that the petition did not state a cause of action, and also moved for judgment on the statement of counsel for plaintiff to the jury. These objections were sustained by the court, and the jury was discharged. Judgment was rendered in favor of the defendant for costs, motion for new trial was overruled, and plaintiff appealed to this court.

Opinion of the court by

PANCOAST, J.: We shall consider this case in the light of the objection to the introduction of evidence under the petition, upon the ground that the same did not state a cause of action, rather than from the standpoint of the objection to the statement of counsel to the jury, as we doubt the propriety of sustaining an objection to the introduction of evidence, and rendering judgment, because the statement of counsel to the jury does not make out a *prima facie* case.

Elaborate briefs have been filed in this case by both parties, and numerous cases cited, yet no case is cited directly in point, or which lays down sufficient general principles upon which a decision can be based in this case. Indeed, counsel for defendant in error admit that the cases in point

are few.  We have been unable to find any case containing some of the material points in the case at bar, yet numerous cases are to be found which lay down principles which are applicable here.  There is one grave defect in the petition, in that it fails to state that the freignt train occupying the side track and blocking the main crossing to the depot, continued to so block the way until the passenger train arrived, or until a time so near the arrival of the passenger train that persons desiring to take passage could not have reached the depot in time to purchase tickets, check their baggage, etc.  The nearest that the petition comes to a statement of that kind is that the plaintiff waited "until the time was close for the arrival of said passenger train, and she could see the smoke from the engine of said passenger train as it approached in the distance from the south.  Thereupon plaintiff started to go over to said depot to see if she could get to said depot, and believing that when she got near said depot that a passage way would be opened up so that she could pass through and get to said depot; that she went over toward said depot over and by the path used by persons generally going to said depot on foot, and leading to the north end of said depot; that when she came near to said freight train on said side track said train had been stopped, and said train closed up, making a solid continuous train of cars completely blocking said pathway, so that she could not get to the depot by that route."

Thereupon she started to go south, and learning that the south crossing was blocked, and she could not pass that way, she reversed her steps and went north.  How long a time this was before the passenger train reached the depot cannot be determined from the petition; or whether or not the freight train did open up a way for passengers to cross the side track

between that time and the time of the arrival of the passenger train is not stated and cannot be determined from the petition. This we think is material, in order to show negligence in the first instance upon the part of the defendant. But conceding that the defendant railway company was negligent in blocking the usual way to the depot, was such negligence the proximate cause of the injury sustained? It is not sufficient that the defendant was negligent, but such negligence must have been the proximate cause of the injury, for no negligence can furnish the foundation of an action for damages, unless it was the proximate cause of the injury. (Thompson on Negligence, vol. 1, sec. 44.) And in order that an act of negligence shall be deemed the proximate cause of the injury it must be such that a person of ordinary intelligence would have foreseen that the accident was liable to be produced thereby. A proximate cause is, therefore, probable cause, or, in other words, that the circumstances were such that the injuries resulting might have been foreseen as likely to result from the wrongful act, or was the natural and probable consequence of the wrongful act. (*Atkinson v. Goodrich* [Wis.] 18 N. W. 764; *Armil v. Chicago, B. & Q R. Co.,* [Iowa,] 30 N. W. 42.)

As stated by Mr. Justice Strong in *Milwaukee and St. Paul Ry. Co. v. Kellog,* 94 U. S. 469:

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

Can we say that the injury in this case ought to have

been foreseen by the defendant company when the company negligently blocked the usual pathway to the depot building? If not, then the injury was not the natural and probable consequence of the negligence or wrongful act. It may be conceded that it should have been foreseen that a person wishing to take passage upon the train of the defendant company, finding the usual pathway to the depot blocked by a freight train, would seek some other mode of ingress to the depot; and it may be conceded that the only other ingress to the depot in this case was that sought by the plaintiff in going around the engine and between the two tracks. But it does not appear that the route so taken was not a reasonably safe one, or that it should have been foreseen by a person using ordinary care that the accident was liable to occur. So far as can be ascertained from the averments in the petition, we think the immediate and proximate cause of the injury in this case was the tripping of the plaintiff at the point where she attempted to cross the ties which extended beyond the rails for the purpose of supporting the cranes or mail catchers. It was not negligence on the part of the defendant company to have these ties in place at that point. There must have been a considerable space between the main track and the side track. There is no statement in the petition to lead one to believe that the route taken along near the main track over these ties was the only one that could have been taken by the plaintiff For aught that appears, except the statement that there was some brush or other obstructions near that point, the balance of the space may have been entirely open and smooth. Nor can we tell from the allegations of the petition how the plaintiff came to fall or trip. It does not seem that these ties, which were several feet apart, and not to exceed eight inches square, were really dangerous to a person traveling on foot in

daylight, or that an injury might have been anticipated if one should attempt to reach the depot by that route. We do not think that any persons using ordinary caution would have apprehended danger in traveling along that point; nor can we believe that a person using ordinary care and caution would have been injured. What is usual the law requires a person doing a wrong to anticipate and provide against, but the law does not require that even a wrong-doer shall anticipate and provide against the unusual.

Special attention is called by the defendant to the case of *Bennett v. Louisville and N. R. R. Co.*, 102 U. S. L. C. P. edition, vol. 26, page 235. The facts in that case, however, are so entirely different from the facts in the case at bar, that the rule laid down there is not, and cannot be, followed as the rule here. In that case the company negligently left open a hatchway in a building through which the passengers had to pass in order to reach the place for taking passage, and a passenger traveling along what was the usual route and the way prepared by the company to reach the point of passage, in the night time, there being no lights provided to enable him to choose his way, coming to the open hatchway, fell into the same. Here there was not only negligence on the part of the company, but that negligence was the immediate, proximate cause of the injury, and the injured person was using due care in passing over the route prepared by the defendant company for reaching its trains and boats. It is true, in that case, as in this, the company did, by implication, invite the parties to come upon the premises for business, and it was the duty of the company to be reasonably sure that it was not inviting them into danger, and to that end the company must use care and prudence to render the premises safe for the visit. Can

we say in the case at bar ·that the path by which the plaintiff undertook to reach the depot was not safe for a person traveling in the day time? If it had been after dark a different condition would have existed. The element of negligence would have been there. The plaintiff would perhaps have had the same right to attempt to reach the depot by the route taken, and it might be conceded that there would have been no reasonable ground to believe that there was danger, yet on account of the darkness, no light being established, it ought to have been foreseen or expected that a person would stumble over the ties which had been laid for the foundation of the cranes; or that it ought to have been foreseen that the plaintiff might fall into any dangerous place, if there was one. But that would not have been this case, because there are elements entering into such a case that do not exist here.

The petition does not show that the injury was the natural and probable consequence of the wrongful act of the defendant company, and that it ought to have been foreseen in the light of the attending circumstances. We therefore conclude that the petition does not state a cause of action, and that the court did not err in sustaining the objection to the introduction of evidence under it.

The judgment is affirmed.

Irwin, J., absent; all the other Justices concurring.